## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Nina Y. Wang

Civil Action No. 24-cv-00375-NYW-NRN

EDWARD LEVY,

     Plaintiff,

v.

ROBERT DANIEL SCHEID,
SCHEID CLEVELAND, LLC, and
CESARE MORGANTI,

     Defendants,

and

ROBERT DANIEL SCHEID, and
SCHEID CLEVELAND, LLC,

     Third-Party Plaintiffs,

v.

ATLAS LAW FIRM, P.C.,

     Third-Party Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Renewed Motion for Summary Judgment Seeking Dismissal of: (A) the First Claim for Relief Due to the Non-Applicability of the FLSA; and (B) the Remaining State Law Claims Due to Lack of Subject Matter Jurisdiction (the "Motion for Summary Judgment"), [Doc. 51], and Plaintiff's Motion to Strike Defendants' Reply in Support of Renewed Motion for Summary Judgment or for Other Sanctions (the "Motion to Strike"), [Doc. 68]. The Court finds that oral argument

would not materially assist in the resolution of these Motions.  For the reasons herein, the Motion for Summary Judgment and the Motion to Strike are respectfully **DENIED**.

## BACKGROUND

On February 7, 2024, Plaintiff Edward Levy ("Plaintiff" or "Mr. Levy") sued Robert Daniel Scheid ("Mr. Scheid"), Scheid Cleveland, LLC ("Scheid Cleveland"), and Cesare Morganti ("Mr. Morganti," and collectively with Mr. Scheid and Scheid Cleveland, "Defendants").  *See* [Doc. 1 at 1].  Mr. Levy claims that he "was employed by Scheid Cleveland . . . from February 24, 2022 through July 8, 2022 as a junior associate . . . [and] as an administrative assistant."  [*Id.* at ¶ 29].  Mr. Morganti is or was a client of Scheid Cleveland, and Plaintiff claims he was hired by Scheid Cleveland to work on the *Morganti* case.  [*Id.* at ¶¶ 16–17].  Broadly speaking, Mr. Levy alleges that he was denied wages for work he performed on the *Morganti* case.  *See, e.g.*, [*id.* at ¶¶ 70–76].  Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA"), the Colorado Wage Act, and Colorado common law.  [*Id.* at ¶¶ 68–106].  Mr. Scheid and Scheid Cleveland then filed counterclaims against Mr. Levy and third-party claims against Atlas Law Firm, P.C. ("Atlas Law Firm") for breach of contract, promissory estoppel, concealment, and false representations.  [Doc. 9 at 57–63 ¶¶ 118–59].

At the May 29, 2024 Scheduling Conference, the Honorable N. Reid Neureiter declined to enter a scheduling order due to concerns about the FLSA's applicability to this dispute.  [Doc. 34 at 1].  Instead, he permitted limited early discovery and directed Defendants to file an early summary judgment motion concerning only the applicability of the FLSA.  [*Id.* at 2].  After that limited discovery, Defendants filed a summary judgment motion.  *See* [Doc. 36 (the "First Summary Judgment Motion")].

On December 5, 2024, this Court denied the First Summary Judgment Motion without prejudice after identifying numerous issues within the Parties' briefs, including violations of Rule 56 of the Federal Rules of Civil Procedure and the undersigned's Civil Practice Standards. *See* [Doc. 50]. The Court permitted Defendants to file another motion, expressly ordering the Parties to review the Court's Practice Standards and Rule 56. [*Id.* at 4]. The Court also ordered the Parties to "focus[] only on the facts that are actually material to the issues to be decided at summary judgment." [*Id.*]. Defendants filed their Motion for Summary Judgment on January 12, 2025, *see* [Doc. 51], and the matter is fully briefed, *see* [Doc. 61; Doc. 67].[1] The facts underlying this case are largely in dispute, and the Court sets forth the limited undisputed material facts below.

***Undisputed Material Facts.*** Mr. Levy is a licensed attorney and the owner of Atlas Law Firm. [Doc. 51 at ¶ 1; Doc. 61 at 6 ¶ 1; Doc. 9 at 35 ¶ 6; Doc. 23 at ¶ 6]. Scheid Cleveland is a limited liability company with two members: Mr. Scheid and Cleveland & Associates, P.C. [Doc. 51 at ¶¶ 4–5; Doc. 61 at 6 ¶¶ 4–5; Doc. 51-6 at ¶ 4]. Jan Cleveland ("Ms. Cleveland") is the sole shareholder of Cleveland & Associates. [Doc. 51 at ¶ 5; Doc. 61 at 6 ¶ 5; Doc. 51-8 at ¶ 3].[2] At all times relevant to this dispute, Atlas Law Firm and Scheid Cleveland operated out of a shared office space called "Office Evolution." [Doc. 51 at ¶¶ 2, 4; Doc. 61 at 6 ¶¶ 2, 4; Doc. 51-4 at 2; Doc. 51-7 at 2; Doc. 51-6 at ¶ 3].

---

[1] Despite the Court's prior admonitions and its suggestion that "[t]he sheer volume of assertions [of fact in the Parties' prior summary judgment briefing] suggests genuine disputes of material fact," [Doc. 50 at 3], the Parties' current briefing contains many of the same issues identified in the Court's December 5 Minute Order. The Court declines to permit the Parties a third opportunity to brief these issues. *See* Fed. R. Civ. P. 1.

[2] Ms. Cleveland is not a named party to this case.

The nature of Mr. Levy's working relationship with Scheid Cleveland is vigorously disputed and the crux of this case. Focusing only on what is undisputed, the Parties agree that Mr. Levy performed work on Scheid Cleveland cases as early as 2019. [Doc. 51 at ¶¶ 75–76; Doc. 61 at 12 ¶¶ 75–76; Doc. 51-6 at ¶¶ 71–72].[3] Scheid Cleveland and Mr. Morganti executed a fee agreement, and Mr. Levy did not have a separate agreement with Mr. Morganti. [Doc. 51 at ¶¶ 83–84; Doc. 61 at 13 ¶¶ 83–84; Doc. 51-9 at ¶¶ 3, 5]. Mr. Levy performed work on the *Morganti* case in 2020, 2022, and 2023. [Doc. 51 at ¶ 82; Doc. 61 at 13 ¶ 82; Doc. 51-6 at ¶¶ 80, 86, 94]. The work Mr. Levy performed included reviewing pleadings and discovery, conducting legal research, and "generating . . . drafts" of substantive briefs. [Doc. 51 at ¶ 96; Doc. 61 at 14 ¶ 96; Doc. 51-6 at ¶¶ 86–87].[4] Scheid Cleveland never issued a Form W-2 or a Form 1099 to Mr. Levy. [Doc. 51 at ¶ 52; Doc. 61 at 10 ¶ 52; *id.* at 19 ¶ 27; Doc. 67 at 10 ¶ 27; Doc. 51-6 at ¶ 47; Doc. 61-43 at ¶ 36].[5]

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve

---

[3] Although Mr. Levy attempts to dispute limited portions of Defendants' assertions of fact, Mr. Levy does not dispute that he performed work on Scheid Cleveland cases. *See* [Doc. 61 at 12 ¶¶ 75–76].

[4] Mr. Levy claims that he also performed document review and clerical work, but he does not deny that he performed the work described above. *See* [Doc. 61 at 14 ¶ 96].

[5] Mr. Levy disputes whether he received a Form W-4 or Form I-9, but not whether he received a Form W-2. *See* [Doc. 61 at 10 ¶ 52].

the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

A movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).  When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court views the record in the light most favorable to the nonmoving party.  *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## ANALYSIS

### I.    Motion for Summary Judgment

Defendants argue that summary judgment is appropriate on Plaintiff's FLSA claim because the FLSA does not apply to the Parties' dispute.  Specifically, Defendants argue that (1) Mr. Levy was an independent contractor, not an employee, [Doc. 51 at 18–20]; (2) Plaintiff cannot establish the requisite "individual coverage" or "enterprise coverage" for his FLSA claim, [*id.* at 20–21]; and (3) the FLSA's "professional exemption defeats [Plaintiff's] FLSA claim," [*id.* at 21].  They also cursorily that "there was no failure to pay any wages or overtime owed."  [*Id.* (emphasis and capitalization omitted)].  They also ask

the Court to decline supplemental jurisdiction over and dismiss "all remaining state law claims against all Defendants due to lack of subject matter jurisdiction." [*Id.* at 2].[6]

### A.    Whether Plaintiff was an Employee or an Independent Contractor

The FLSA was enacted to "protect all covered workers from substandard wages and oppressive working hours," as these labor conditions are "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (cleaned up). It effectuates this purpose by, inter alia, requiring overtime pay in certain circumstances. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015); 29 U.S.C. § 207(a)(1).

The FLSA protects only those workers who fall within the statute's definition of "employee." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 (1985). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). And "employ" is defined as "suffer or permit to work." *Id.* § 203(g).

The question of whether an individual is an "employee" under the FLSA "is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994). Instead, the focus is on "the economic realities of the relationship," i.e., whether the worker is economically dependent on the business for which he provides

---

[6] Defendants do not address how their counterclaims and crossclaims would be affected if the Court were to grant the Motion for Summary Judgment in full. *See* [Doc. 51].

services, or whether the worker is in business for himself. *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989) (quotation omitted). Six factors, known in combination as the "economic realities" test, are relevant to this analysis:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Henderson*, 41 F.3d at 570; *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018). These factors are considered in their totality, and no one factor is dispositive. *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998).

Importantly, whether a person is an employee under the FLSA is a question of law. *Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996). But "[t]he existence and degree of each factor is a question of fact." *Dole*, 875 F.2d at 805 (quotation omitted). Where, as here, the factual issues are to be decided by a jury, the question at summary judgment is "whether the evidence [about the employer-employee relationship or lack thereof] [i]s uncontroverted and could lead to no other interpretation." *Herr*, 75 F.3d at 1513; *see also Henderson*, 41 F.3d at 571 & n.2 (explaining that the district court must make certain factual findings "if it is the trier of fact," but if the trial is to a jury, "the district court should give instructions to the jury which lay out the pertinent factors to be considered").

Indeed, "[c]ourts have repeatedly denied summary judgment motions where there were genuine disputed facts material to the classification of workers as independent contractors or employees." *Elkins v. Powersports Pit Stop LLC*, No. 1:21-cv-00030-JNP, 2023 WL 2574362, at *3 (D. Utah Mar. 20, 2023) (collecting cases); *see also, e.g., Fellers v. Bohm Farm & Ranch, Inc.*, No. 22-cv-02499-JAR, 2024 WL 382550, at *4 (D. Kan. Feb.

1, 2024) (denying summary judgment where "a reasonable jury could conclude that the factors weigh in favor of a finding that [the plaintiff] was an employee"); *Merrill v. Pathway Leasing LLC*, No. 16-cv-02242-KLM, 2018 WL 2214471, at *12 (D. Colo. May 14, 2018) (same). "[I]f there are disputed issues of fact within the six factors of the economic realities test, then the court must deny summary judgment." *Elkins*, 2023 WL 2574362, at *3; *see also Henderson*, 41 F.3d at 570–71. Thus, at this stage, the Court must evaluate the Parties' presentation of each factor of the economic realities test and determine whether the record is "so 'one-sided' as to mandate that [Defendants] prevail as a matter of law," *Elkins*, 2023 WL 2574362, at *3, or whether genuine disputes of fact preclude summary judgment.

### 1. Degree of Control

The first factor the Court considers is the business's degree of control over the individual worker. *Baker*, 137 F.3d at 1441. Considerations relevant to this factor include "[the worker's] independence in setting his own work hours and other conditions and details of his work, the extent of [the employer's] supervision of [the employer], and the degree of [the worker's] ability to work for other employers." *Acosta*, 884 F.3d at 1235.

Defendants argue that this factor weighs in their favor because (1) Plaintiff could work for others; (2) he advertised independently; (3) he performed work using his own equipment; and (4) Plaintiff's deadlines were driven by the case schedule. [Doc. 51 at 19].[7] These arguments do not cite to record evidence or to Defendants' statements of

---

[7] Defendants also argue that Plaintiff's "emails and drafts show his control over his work product." [Doc. 51 at 19]. Like many other assertions in Defendants' Motion, this contention is not supported by a citation to any evidence, and the vague, conclusory statement that unidentified emails and drafts "show [Plaintiff's] control over his work product" is insufficient to establish an undisputed fact. Similarly, Defendants argue that

undisputed facts.  Plaintiff responds that Defendants "retained almost total degree of control" over his work and that he was never allowed to enter an appearance or file pleadings under his own name.  [Doc. 61 at 24–25].  These assertions are also unsupported by citations to record evidence.

As for Defendant's assertion that Plaintiff "could work for others," [Doc. 51 at 19], although it is undisputed that Mr. Levy "controls the management of Atlas Law [Firm]," [Doc. 51 at ¶ 48; Doc. 61 at 9 ¶ 48; Doc. 51-6 at ¶ 40], it is not clear from the properly considered, supported, and undisputed facts whether Mr. Levy was performing independent work at the time of the alleged employment period in early 2022.[8]  Similarly, as for Defendants' reliance on Plaintiff's advertising practices, it is undisputed that Mr. Levy has publicly advertised his services in certain practice areas.  [Doc. 51 at ¶ 42; Doc. 61 at 9 ¶ 42; Doc. 51-18].  However, it is unclear whether Mr. Levy was advertising independent services during the relevant alleged employment.  *See* [Doc. 51-18 at 2, 12 (captures of Plaintiff's website and LinkedIn page taken June 21, 2024)].  Moreover, Defendants do not cite any legal authority showing that this is a relevant consideration to the "degree of control" factor.  *See* [Doc. 51]; *see also Acosta*, 884 F.3d at 1235 (setting out relevant considerations).

---

Plaintiff "worked his own hours at the places he chose."  [*Id.* at 18].  This statement is also unsupported by citations to the record, and it is not this Court's duty to comb through the record for support for Defendants' assertion.  *See Adler*, 144 F.3d at 672 (explaining that courts "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").

[8] Defendants contend that Mr. Levy "independently offered services to his largest client, First Church," [Doc. 51 at 19], but it is unclear from the record whether Mr. Levy was performing work for First Church at the relevant time period.  The only First Church-related evidence clearly cited by Defendants only demonstrates that *Scheid Cleveland* performed work for First Church from 2019 to 2021.  *See, e.g.*, [Doc. 51-6 at ¶ 75; Doc. 51-32].

The Parties dispute the degree of control Scheid Cleveland had over Plaintiff's schedule and substantive work. Defendants contend that Plaintiff "made his own choices as to when he worked at home or took other time off," [Doc. 51 at ¶ 59], but Plaintiff denies this, asserting that Mr. Scheid "required 24 hour access to" Plaintiff, [Doc. 61 at 10 ¶ 59]; *see also* [Doc. 61-43 at ¶ 31(stating that Plaintiff "was required to be accessible to Scheid by phone and on call"); Doc. 61-42 at ¶ 10].[9]  As for substantive work product, there is a dispute as to whether Plaintiff prepared substantive work himself, *see* [Doc. 51 at ¶ 110; Doc. 51-6 at ¶ 100(d)–(f))], or whether Mr. Scheid dictated drafts to Mr. Levy, directed Mr. Levy's revisions, and "edited[] and completed all work," [Doc. 61 at 14 ¶¶ 98–99; Doc. 61-43 at ¶ 18].

An alleged employer's control over the worker's hours and work assignments suggests an employer-employee relationship.  *Baker*, 137 F.3d at 1441; *cf. Acosta*, 884 F.3d at 1235 (because the employer "did not exercise substantial control over" the alleged employee's work, this factor weighed in favor of independent contractor classification). Although the showing on either side is not particularly strong, there are disputes over Scheid Cleveland's degree of control over Mr. Levy, and a reasonable jury could conclude that this factor weighs in favor of finding that Plaintiff was an employee.  *See Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347, 1356 (D. Kan. 2016) ("While the defendant denies any direct and immediate control over the [workers], the plaintiff's evidence certainly disputes these matters as to prevent summary judgment here."); *see also Elkins*, 2023

---

[9] Defendants do not clearly argue that Plaintiff's affidavit is a "sham" affidavit.  *See* [Doc. 67]; *see also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (discussing the sham affidavit doctrine).  Defendants' cursory citations orbiting around the issue, *see* [Doc. 67 at 3], are insufficient to properly present the issue to the Court.

WL 2574362, at *3 (finding that the defendant's statements about plaintiff's independence "alone" created genuine disputes of fact as to the degree of control exercised over the plaintiff).

### 2.    Opportunity for Profit or Loss

This factor looks at whether the worker "had the ability to profit based on his performance," which is "consistent with the characteristics" of an independent contractor. *Acosta*, 884 F.3d at 1236 (quoting *Baker*, 137 F.3d at 1441).  "Independent contractors typically assume the risk of earning a profit or suffering a loss based on performance while employees are paid regardless of performance."  *Elkins*, 2023 WL 2574362, at *3.

Defendants argue that Plaintiff "controlled his own firm and his own profit opportunities therein" and was "free to generate his own business," [Doc. 51 at 19], but they do not cite any authority demonstrating that Plaintiff's ability to control or profit *within his own firm* is a relevant consideration.  This factor looks to whether the Plaintiff had the ability to profit based on his performance with respect to the alleged employer.  *See Dole*, 875 F.2d at 810 (examining whether the workers had "control over the essential determinants of profits" or "direct share in the *success of the business*"); *Fellers*, 2024 WL 382550, at *5 (looking at whether the plaintiff had control over the profits, expenditures, or success in the defendant's business).  Second, Defendants argue that Plaintiff was "free to . . . accept or reject any services requested by [Scheid Cleveland]." [Doc. 51 at 19].  This assertion is not supported by any citation to evidence, and the Court cannot ascertain a corresponding assertion of fact in Defendants' Statement of Undisputed Facts.  Accordingly, this assertion will not be considered.  *See Svoboda v.*

*State Farm Mut. Auto. Ins. Co.*, No. 23-cv-01112-CNS-NRN, 2025 WL 1951903, at *3 n.4 (D. Colo. July 16, 2025) (disregarding unsupported assertions of fact).

Plaintiff asserts that he "had no opportunity to participate in [Scheid Cleveland's] profit and loss," he "had little interaction" with Mr. Scheid's clients, and he did not set fees or accept "Scheid cases." [Doc. 61 at 25]. These assertions are unsupported by citations to record evidence, *see* [*id.*], but elsewhere in his Response, Mr. Levy raises a dispute about whether Mr. Scheid set billing rates and determined whether the *Morganti* matter would be billed hourly or on contingency fee, *see* [*id.* at 12 ¶ 74; Doc. 61-43 at ¶ 33]; *see also* [Doc. 67 at 6 ¶ 74].

Neither side has made an adequate showing on this factor. Aside from the singular dispute about whether Mr. Scheid set applicable rates, the Court independently observes that Mr. Levy's declaration states that he received an offer of employment from Mr. Scheid, through which he was offered a $104,000 yearly salary ($50 hourly), his wages "were not [to be] dependent upon any outcome in" the *Morganti* case, and he was to be paid monthly. [Doc. 61-43 at ¶¶ 5–7]. Payment on a fixed schedule, without the opportunity for profit or loss based on the worker's performance, is indicative of employee status, *Baker*, 137 F.3d at 1441; *Acosta*, 884 F.3d at 1236, but it is unclear from the record whether these alleged payments were ever made.

In sum, Defendants have not demonstrated that this factor weighs in their favor, but Plaintiff similarly has not demonstrated a genuine dispute of fact with respect to this factor. In other words, the evidence is "not so 'one-sided' as to mandate that [Defendants] prevail as a matter of law." *Elkins*, 2023 WL 2574362, at *3.

### 3.    Investment in the Business

This factor looks at "[t]he amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Baker*, 137 F.3d at 1442 (quotation omitted). "A minimal investment weighs in favor of employee status." *Fellers*, 2024 WL 382550, at *6 (citing *Acosta*, 884 F.3d at 1236). However, this factor requires a comparison between the investments of the worker and the vestments of the alleged employer. *Acosta*, 884 F.3d at 1236. "Even a significant investment by a worker could weigh in favor of employee status where the employer invests a disproportionately larger amount." *Fellers*, 2024 WL 382550, at *6.

Defendants assert that Plaintiff "created multiple entities, incurred his own lease expense, obtained his own access to [Office Evolution]'s equipment/support, invested in his own ads/websites . . . , voluntarily invested in contingency fee cases, and had his own accounting/finances." [Doc. 51 at 19]. But again, Defendants cite no authority showing that Plaintiff's investment in his own "entities" is relevant to Plaintiff's investment *in Scheid Cleveland*, the alleged employer. *See* [*id.*]. Plaintiff responds that he "had no investment in the Firm's work facilities other than his personal office lease," which is again not supported by any evidence. [Doc. 61 at 25].[10]

Neither Party compares the relative investments of Plaintiff and Scheid Cleveland or puts forth evidence of Scheid Cleveland's investments; thus, the Court's ability to analyze this factor is limited. *Cf. Fellers*, 2024 WL 382550, at *6 (finding it impossible to compare the parties' investments because there was no evidence of the alleged

---

[10] Confusingly, Plaintiff elsewhere states that "[n]either Levy nor any entity related to him leases physical office [sic] at the Office Evolution Executive Suite." [Doc. 61 at 6 ¶ 3].

employer's investments in the business).  The Court independently observes that it is undisputed that Scheid Cleveland and the Atlas Law Firm had offices in a shared office space.  [Doc. 51 at ¶¶ 2, 4; Doc. 61 at 6 ¶¶ 2, 4; Doc. 51-6 at ¶ 3].  However, even if Mr. Levy maintained his own office space and lease, this does not necessarily suggest that he was an independent contractor.  *Cf. Dole*, 875 F.2d at 810 ("[T]he fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status.").  There is also a potential dispute of fact as to whether Scheid Cleveland permitted Mr. Levy access to the Scheid Cleveland Westlaw account, *see* [Doc. 61 at 16 ¶ 112; *id.* at 18 ¶ 21], though it is unclear to the Court whether Defendants actually dispute this assertion, *see* [Doc. 67 at 8 ¶ 112; *id.* at 10 ¶ 21].

At bottom, Defendants have not provided a meaningful amount of evidence of Plaintiff's investments in Scheid Cleveland.  A reasonable jury "could find that the investments that can be ascribed to Plaintiff were negligible," and so "a reasonable jury could find that this factor favors employee-status."  *Fellers*, 2024 WL 382550, at *7–8.

### 4.    Permanence of Working Relationship

"'Independent contractors' often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration."  *Dole*, 875 F.2d at 811.

Defendants argue that this factor weighs in their favor because "[t]he only work for which employment is claimed lasted 3 months" and was only related to *Morganti*.  [Doc.

51 at 20]. In Defendants' view, this work "created no permanence." [*Id.*].[11] They briefly cite *Baker* for the proposition that independent contractors often work for fixed periods, while employees typically work for an indefinite duration. [*Id.* (quoting *Baker*, 137 F.3d at 1442)]. However, Defendants' conflation of the *length* of the alleged employment period with the *permanence* of the alleged employment period is not supported by any argument. While the length of the working relationship may be relevant in certain instances, the short length of an alleged employment period does not necessarily mean that it was for a fixed duration. *Cf. Baker*, 137 F.3d at 1442 (although workers usually worked for fewer than two months at a time, the temporary nature of their employment was typical for their type of work, so their working relationships were properly considered permanent). Indeed, an employee's indefinite term of employment can simply end quickly. Defendants have cited no evidence that Plaintiff's working relationship with Scheid Cleveland was for a "fixed term."[12] And there is no evidence before the Court as to how the working relationship ended, which might shed light on the permanent or impermanent nature of the arrangement.

For his part, Plaintiff asserts that he was "employed for extended continuous time, approximately four years." [Doc. 61 at 25]. Not only is this assertion unsupported by any citation to record evidence, but it contradicts Plaintiff's theory of FLSA relief stated in the Complaint. Specifically, Plaintiff alleges that he

> was employed by Scheid Cleveland for the Morganti Case *from February 24, 2022 through July 8, 2022* as a junior associate performing research as

---

[11] The Court does not consider Defendants' assertion that this "limited span of work was fixed by the briefing schedules," [Doc. 51 at 20], as it is unsupported by evidence and not properly before the Court, *Svoboda*, 2025 WL 1951903, at *3 n.4.

[12] Plaintiff asserts that he "terminated his employment in Morganti on July 8, 2022." [Doc. 61 at 3–4]. This is not supported by a citation to record evidence.

well as an administrative assistant doing office work including word processing, reviewing court dockets, preparing paper files, and incorporating Defendant Scheid's revisions to drafts of documents and pleadings.

[Doc. 1 at ¶ 29 (emphasis added)].  He does not allege that he was an employee at any other point in time.  *See* [*id.*]; *see also Fuqua v. Lindsey Mgmt. Co.*, 321 F. App'x 732, 734 (10th Cir. 2009) ("Normally a claim or theory that is not adequately raised in the complaint will not be considered."); *Shyers v. Metro. Prop. & Cas. Ins. Co.*, No. 24-5036, 2025 WL 2088721, at *1 (10th Cir. July 25, 2025) ("Plaintiffs generally cannot defeat summary-judgment motions by relying on facts . . . distinct from their complaints' factual theories.").  Plaintiff has not created a genuine dispute of fact as to whether the alleged employment relationship lasted four years.

Neither Party has put forth a robust showing on this factor.  At best, it is undisputed that Plaintiff's work on the *Morganti* matter was for a span of at least a few months.  But as explained above, given the lack of information and evidence in the record about this working relationship, the length of the working relationship is of little relevance to the question before the Court, *Baker*, 137 F.3d at 1441, and does not provide support to Defendants' request for summary judgment.

### 5.    Degree of Skill

If the job in question requires specialized skills, this is "indicative of employee status."  *Dole*, 875 F.2d at 811.  But while "the lack of the requirement of specialized skills is indicative of employee status, . . . the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way."  *Baker*, 137 F.3d at 1443 (quotations omitted).

The presentation on this issue from both sides is minimal. Defendants assert that "[i]t is undeniable that Levy's work required education, experience, specialized skills, and a professional license."[13] [Doc. 51 at 20]. In support, Defendants direct the Court to a number of invoices billed to Scheid Cleveland from the Atlas Law Firm from 2020 to 2021. *See* [*id.* at ¶ 58; Doc. 51-22]. These invoices, however, do not demonstrate the skills required for Plaintiff's work on the Morganti matter *in 2022*, the time period in question. Nor do Defendants cite any legal authority discussing whether a worker's professional licenses alone demonstrate that *the job itself* required special skills. *See* [Doc. 51].

On the other hand, Plaintiff does not generally dispute that he performed legal work for Scheid Cleveland, including at least some work on substantive motions. [Doc. 61 at 14 ¶ 96–97; Doc. 51-6 at ¶¶ 86–87]. But as explained above, Plaintiff maintains that he had minimal control over substantive work, and that Mr. Scheid dictated the contents of drafts, directed revisions, and "completed all work." [Doc. 61 at 14 ¶¶ 98–99]. Plaintiff insists that the level of skill required for his work was "not extraordinary for a law firm" and that his tasks of "typing and clerical support require[d] no special skill." [*Id.* at 25]. There is at least some dispute as to whether Plaintiff ever performed clerical work on Scheid Cleveland's behalf. *See* [*id.* at 14 ¶ 96; *id.* at 17 ¶ 10; Doc. 61-43 at ¶ 24].

Because there is limited information about the nature of Plaintiff's work and the Parties' arguments are generally undeveloped, this issue cannot be resolved at summary judgment. But because the Court must view the record in Plaintiff's favor, and because

---

[13] Defendants assert that Mr. Levy "also needed 'business acumen' to maintain *his firm's profitability.*" [Doc. 51 at 20 (emphasis added)]. Defendants do not argue or present evidence that Mr. Levy was required to employ any "business acumen" within the context of his work for *Scheid Cleveland*.

there are disputes of fact about the clerical nature of Plaintiff's work, the Court finds that a reasonable jury could find that this factor minimally weighs in Plaintiff's favor.  *See Pulido v. Desert Platinum Props., LLC*, No. 22-cv-01704-PHX-DWL, 2024 WL 3936386, at *6 (D. Ariz. Aug. 26, 2024) (denying summary judgment where although the plaintiff was required to hold a real estate license for her job, it was unclear from the record whether the plaintiff's primarily clerical job required special skills); *Vignoli v. Clifton Apartments, Inc.*, No. 12-cv-24508, 2014 WL 6850775, at *5 (S.D. Fla. Oct. 7, 2014) (recommending dismissal of summary judgment motion where the defendants made "no showing . . . whatsoever" that "performing clerical duties required special skills"), *report and recommendation adopted*, 2014 WL 6850778 (S.D. Fla. Dec. 3, 2014).

### 6.    Whether the Worker's Work is an Integral Part of the Business

If a worker's services are a "necessary component of" the business, then this factor weighs in favor of employee status.  *Acosta*, 884 F.3d at 1237 (quotation omitted).

Defendants argue that Mr. Levy was not an integral part of Scheid Cleveland's business because "[h]is claimed employment was a few short months" and Scheid Cleveland's named partners "had practiced for decades."  [Doc. 51 at 20].[14]  However, Defendants do not cite any legal authority suggesting that if the worker's colleagues have more experience, then the worker's services are not integral to the alleged employer's business.  They also argue that the two Scheid Cleveland lawyers "had access to other contract lawyers."  [*Id.*].  This is not supported by a citation to the record, but elsewhere in their Motion for Summary Judgment, Defendants mention one other lawyer who

---

[14] Defendants' statement that Mr. Scheid and Ms. Cleveland "had much broader practices in which Levy was not involved," [Doc. 51 at 20], is not supported by citations to evidence or argument explaining why this is a relevant consideration.

performed contract work for Scheid Cleveland.  *See, e.g.*, [Doc. 51 at ¶¶ 27–39].  It is undisputed that this lawyer, Fred Winters, worked as an independent contractor.  [Doc. 51 at ¶ 30; Doc. 61 at 8 ¶ 30; Doc. 51-6 at ¶ 20].

Mr. Levy asserts that he "provided services that are a part of employer's [sic] regular business and integral to it."  [Doc. 61 at 25].  This assertion is unsupported by citations to evidence, meaningful argument, or explanation as to what these integral services were.

It is axiomatic that legal work and accompanying clerical work could be a "necessary component of," and integral to, the business of a law firm, especially when the work performed is related to one of the law firm's active cases.  *Cf. Dole*, 875 F.2d at 811 (recognizing that work performed by cake decorators was "obviously integral" to bakery's business); *Elkins*, *2023 WL 2574362*, at *5 ("Defendants are in the business of fixing motorcycles and all-terrain vehicles.  Plaintiff was the mechanic who serviced those vehicles.  It is difficult to imagine a more integral type of work that Plaintiff could perform for Defendants.").  As mentioned above, the nature of Mr. Levy's work on *Morganti* during the relevant time period is largely disputed.  Defendants claim that Mr. Levy participated in discovery, conducted legal research, "prepared 2 extension motions, 5 motions responses, affidavits, and exhibits," and prepared a "first draft of the entire summary judgment response."  [Doc. 51 at ¶¶ 95–98; Doc. 51-6 at ¶¶ 86–87].  Mr. Levy does not dispute the entirety of these assertions, but he maintains that Mr. Scheid dictated substantive drafts and directed his revisions.  *See* [Doc. 61 at 14 ¶¶ 95–98; Doc. 61-43 at ¶ 18].  In any event, a reasonable jury could conclude based on the current record that

Mr. Levy's work was a necessary component of Scheid Cleveland's business during the relevant timeframe.

### 7.    Totality of the Circumstances

At summary judgment, the relevant question "is whether a reasonable jury could make findings which would support the legal conclusion that Plaintiff is an employee." *Fellers*, 2024 WL 382550, at *8. The Court has identified a number of disputed facts, and based on those disputes, a jury could make factual findings to support the legal conclusion that Plaintiff was an employee of Scheid Cleveland. *See supra* Parts I.A.I, I.A.3, I.A.5, I.A.6. Accordingly, Defendants have not demonstrated that they are entitled to judgment as a matter of law with respect to Plaintiff's FLSA claim on this basis.

### B.    Enterprise and Individual FLSA Coverage

Next, Defendants contend that Plaintiff "cannot establish enterprise [or individual] coverage under the FLSA." [Doc. 51 at 2–3]. The FLSA requires an employer to pay overtime to "employees . . . engaged in commerce or . . . employed in an enterprise engaged in commerce" who work over 40 hours per week. 29 U.S.C. § 207(a)(1). To meet his burden of demonstrating the FLSA's applicability, Mr. Levy may either demonstrate that (1) he was individually "engaged in commerce," or (2) Scheid Cleveland is an "enterprise engaged in commerce." *Reagor v. Okmulgee Cnty. Fam. Res. Ctr.*, 501 F. App'x 805, 808 (10th Cir. 2012).

Enterprise coverage requires an enterprise with "two or more employees who are directly engaged in commerce or . . . employees handling goods or materials that have been moved in commerce" and "annual gross volume sales over $500,000." *Harlas v. Barn LLC*, No. 18-cv-02320-RM-NYW, 2020 WL 730313, at *3 (D. Colo. Feb. 13, 2020).

For individual coverage, the employee must "directly participate in the actual movement of persons or things in interstate commerce." *Reagor*, 501 F. App'x 805 at 809 (cleaned up). This requirement may be met if the employee "regularly and recurrently use[s] an instrument of interstate commerce, such as a telephone." *Id.* Courts have also concluded that sending emails to out-of-state recipients may satisfy this requirement. *See, e.g.*, *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1375 (S.D. Fla. 2016); *Markle v. Drummond Advisors, LLC*, No. 19-cv-02789, 2020 WL 777272, at *5 (N.D. Ill. Feb. 18, 2020); *Tanis v. Austin Priv. Car Serv., Corp.*, No. 1:20-cv-01202-RP, 2022 WL 1793520, at *3 (W.D. Tex. Mar. 11, 2022). And "[s]pecific instances of interstate . . . transactions . . . using credit cards . . . in the course of a plaintiff's work may demonstrate that the plaintiff is engaged in interstate commerce under the FLSA." *Tanis*, 2022 WL 1793520, at *3; *Kim v. Hopfauf*, No. 1:15-cv-09127, 2017 WL 85441, at *2 (N.D. Ill. Jan. 10, 2017). Importantly, "[i]solated or sporadic activities do not satisfy this requirement." *Reagor*, 501 F. App'x at 809.

Defendants argue that Plaintiff "never directly, regularly, or recurrently participated in the movement of anything in interstate commerce." [Doc. 51 at 20–21 (emphasis omitted)]. They contend that any claimed interstate activities were limited, and interstate phone calls were "rare" or "*de minimis*." [*Id.* at 21]. These assertions are not supported by citations to record evidence. *See* [*id.*]. Mr. Levy responds that individual coverage exists because he regularly made phone calls to individuals located in other states. [Doc. 61 at 2, 22–23]. He also asserts that he "regularly communicated [with] or telephoned" Mr. Scheid and Ms. Cleveland when he was out of state and that he "used credit cards and the Internet to purchase supplies" for Scheid Cleveland. [*Id.* at 18 ¶¶ 18, 22].

Genuine disputes of material fact—namely, whether Mr. Levy regularly and recurrently used an instrument of interstate commerce during the alleged employment—preclude summary judgment on this issue.  Mr. Levy claims that he used the telephone across state lines for work.  [*Id.* at 11 ¶ 66; *id.* at 12 ¶ 71; *id.* at 18 ¶¶ 17–18; Doc. 61-43 at ¶ 27; Doc. 61-41 at ¶¶ 3–4].   Defendants counter that "Scheid's phone records show 2 calls with Levy during the claimant employment period," "Cleveland's records show 1 voicemail from Levy," and "[a paralegal] recalls only 1 call with Levy" during the relevant timeframe.  [Doc. 51 at ¶¶ 67–69]; *see also* [Doc. 51-6 at ¶ 63 (stating that Scheid had "only two calls with Levy" during the relevant time period); Doc. 51-8 at ¶ 53; Doc. 51-14 at ¶ 19]. These disputes cannot be resolved at summary judgment.  Further, Mr. Levy also claims that he "regularly communicated via . . . email with the Firm's paralegal located in Louisiana" and also communicated via interstate email with Mr. Scheid, Ms. Cleveland, and an expert witness.  [Doc. 61 at 11 ¶ 69; Doc. 61-43 at ¶ 27; Doc. 61-41 at ¶ 6].  He also claims to have used credit card to purchase office supplies from "out of state vendors." [Doc. 61 at 18 ¶ 22; Doc. 61-43 at ¶ 30].

While Plaintiff's evidence is not robust, the Court cannot weigh the strength of this evidence and is required to draw reasonable inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 249.  In so doing, the Court finds that Plaintiff has established a genuine dispute of material fact as to whether his interstate activities are sufficient to trigger individual FLSA coverage.  *See Bocanegra v. Arepas House, LLC*, No. 21-cv-03087-WJM-SP, 2023 WL 4297575, at *4–5 (D. Colo. June 30, 2023) (assessing a similar level of interstate activities, finding that the plaintiff "just barely" raised

a genuine dispute of fact as to whether his interstate activities were sufficient for individual

FLSA coverage).  Accordingly, summary judgment is not warranted on this basis.[15]

### C.    The FLSA's Professional Employee Exemption

"[N]ot all workers require the same kind of protection under the FLSA.  *Ellis*, 779

F.3d at 1187 (cleaned up).  Specifically, and relevant here, employees employed in a

"professional capacity" are exempt from the FLSA's overtime provisions.  29 U.S.C.

§ 213(a)(1).  Defendants contend that the FLSA's professional exemption "defeats

[Plaintiff's] FLSA claim."  [Doc. 51 at 21].  In support, they state that Plaintiff performed

work requiring "advanced learning, discretion, judgment, intellect, and skills," not clerical

work.  [*Id.*].

Defendants' argument is undeveloped, relies on outdated and inapplicable

authority, and is insufficient to warrant summary judgment in their favor.  First, Defendants

state that "[t]he requirements for a 'professional' are found at 29 CFR §541 et. seq. [sic],"

[Doc. 51 at 7], without citing to any particular section of this regulation.  They then direct

the Court to a 1992 case from the Southern District of Ohio that they claim sets out the

elements of a professional employee under the FLSA.  *See* [*id.* (citing *Martin v. W.E.*

*Monks & Co.*, 805 F. Supp. 500, 501 (S.D. Ohio 1992))].  According to Defendants, a

"professional" employee is

> any employee:  (a) whose *primary duty* consists of work requiring learning
> customarily acquired by a prolonged course of specialized instruction and
> study; (b) whose work requires the consistent exercise of discretion and
> judgment; (c) whose work is *predominantly* intellectual and varied in
> character (as opposed to routine mental, manual, mechanical, or physical
> work); (d) who does not devote more than 20% of his hours to activities not

---

[15] Because individual coverage and enterprise coverage are two separate ways to show
the FLSA's applicability, *Reagor*, 501 F. App'x at 808, the Court need not address the
issue of enterprise coverage to deny summary judgment.

an essential part of and necessarily incident to the work; and (e) who is compensated on a salary or fee basis of not less than $170 per week.

[Doc. 51 at 7 (citing *Martin*, 805 F. Supp. at 503)]. Later in their brief, they cite to a 1985 Fifth Circuit case with the cursory parenthetical "advanced learning streamline test under 29 CFR §541.3(a)(1) [sic]." [*Id.* at 27 (citing *Paul v. Petroleum Equip. Tools Co.*, 708 F.2d 168, 170 (5th Cir. 1983))].

The case law's reference to a minimum $170 weekly salary (amounting to an annual pre-tax salary of $8,840) should have immediately put Defendants on notice that they were citing to outdated and inapplicable law. The $170 weekly earning requirement has been obsolete for over two decades. *See* 69 Fed. Reg. 22,122 (Apr. 23, 2004) (setting minimum required salary at $455); *Marcus v. Lominy*, No. 18-cv-01857-NSR, 2022 WL 493688, at *16 n.87 (S.D.N.Y. Feb. 17, 2022) ("From 2004 to 2019, the FLSA salary test required that exempt employees be compensated on a salary basis at a rate of not less than $455 per week."). Defendants' reliance on a 40-year-old case employing a "streamline test" to determine professional status is also outdated. *Compare Paul*, 708 F.2d at 170 (explaining the differences between the separate "long test" and "streamline test" to determine an employee's professional status), *with Mayfield v. U.S. Dep't of Lab.*, 693 F. Supp. 3d 712, 713 (W.D. Tex. 2023) ("In 2004, the Department *replaced the two-tiered test structure with a single test*, which paired a 'standard' duties test with a 'standard' salary-level test of $455 per week ($23,660 annually)." (emphasis added)), *aff'd*, 117 F.4th 611 (5th Cir. 2024)

Rule 11 of the Federal Rules of Civil Procedures states that by presenting and signing a motion, the attorney is "certify[ing] that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that

the motion's "legal contentions are warranted by existing law."  Fed. R. Civ. P. 11(b)(2).
Defendants' citation to and reliance on blatantly inapplicable legal authority does not meet
this minimum requirement.

Because *both* Parties' submissions have not met the standards that this Court
expects from practitioners litigating in federal court, the Court declines to impose
sanctions under its inherent authority to do so under 28 U.S.C. § 1927.  **However, the
Court expects that all Parties' future work product will reflect the level of
professionalism and effort that is required of all lawyers practicing in federal court.**

Since Defendants' argument is both undeveloped and unsupported by applicable
authority, Defendants have not met their burden at summary judgment.  The professional
employee exemption applies to employees (1) who are compensated on a specific weekly
salary or fee and (2) whose primary duty is the performance of work that requires
"knowledge of an advanced type in a field of science or learning customarily acquired by
a prolonged course of specialized intellectual instruction."  29 C.F.R. § 541.300(a).  In
2022, the time of the alleged employment, the required weekly salary was $684 per week.
29 C.F.R. § 541.300(a)(1) (2022); *id.* § 541.600 (2022).  Because Defendants ignore the
weekly compensation requirement, *see* [Doc. 51 at 21], they have not met their burden of
demonstrating that they are entitled to judgment as a matter of law.[16]

---

[16] Defendants do not argue in their Motion for Summary Judgment that Mr. Levy is exempt
under 29 C.F.R. § 541.304, which exempts "[a]ny employee who is the holder of a valid
license or certificate permitting the practice of law or medicine or any of their branches
and is actually engaged in the practice thereof," *without* a minimum salary requirement.
29 C.F.R. § 541.304(a)(1), (d); *see also* [Doc. 51 at 21].  Although they attempt to raise
this exemption for the first time in their reply brief, *see* [Doc. 67 at 2, 14], it is well settled
that arguments raised for the first time in a reply brief are waived, *Aptive Env't, LLC v.
Town of Castle Rock*, 959 F.3d 961, 986 (10th Cir. 2020).  This argument is thus not
properly before the Court, and the Court does not address it.

### D.    Defendants' Final Argument

Finally, Defendants argue that

Levy acknowledged that Morganti was "*contingency*."  He made no claim that he would be owed any hourly fees.  Nor did he submit any time records, as one would do if hourly pay was expected.  Thus, he provided no basis on which to claim wages – and showed no overtime.

[Doc. 51 at 21].  This is the entirety of Defendants' final argument, and the Court finds this assertion difficult to understand, undeveloped, and insufficient to warrant summary judgment.  First, this argument veers beyond the limited purpose of the early summary judgment motion, which was to ascertain the applicability of the FLSA, not determine the merits of Plaintiff's claim.  *See* [Doc. 34 at 2; Doc. 35 at 9:4–25].  As Defendants themselves concede, the Parties have been permitted only limited discovery, *see* [Doc. 69 at 7 n.1 ("Defendants have not yet been provided with a right of discovery in this case.")], and addressing the merits of any claims is premature.  Second, Defendants' argument ignores the dispute about an alleged offer of employment from Scheid Cleveland to Mr. Levy.  *See* [Doc. 61-43 at ¶¶ 5–7].  Summary judgment is not warranted on this basis.

Because genuine issues of material fact exist as to Plaintiff's status, and because Defendants have not met their burden to demonstrate entitlement to summary judgment on another basis, the Motion for Summary Judgment is respectfully **DENIED**.

## II.    Motion to Strike

In his Motion to Strike, Mr. Levy asks the Court to strike Defendants' reply brief for (1) including "a deceptive authority quotation," and (2) "not consecutively lettering the Reply's additional exhibits."  [Doc. 68 at 1].  The Motion is filed under Rule 11, which provides:

(c) Sanctions.

(1) In General.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) Motion for Sanctions.  A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c).

Rule 11(c)(2)'s "safe harbor" provision "requires that a party seeking sanctions serve its motion on the opposing party 21 days before filing."  *Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 676 (D. Colo. 2014).  The safe harbor provision is "strictly enforced."  *Williams v. Denmar LLC*, No. 21-cv-01431-DDD-NRN, 2022 WL 15517045, at *7 (D. Colo. Oct. 27, 2022).

Plaintiff did not comply with Rule 11's safe harbor provision prior to filing the Motion to Strike.  The Motion states that Plaintiff "conferred with Defendant Scheid and S. Jan Cleveland for Scheid Cleveland by telephone on March 19, 2025 at 1:30 p.m. and allowed one day for them to provide a position as a safe harbor regarding the relief sought in this Motion."  [Doc. 68 at 2].  Plaintiff filed his Motion the next day, without waiting the required 21 days under Rule 11(c)(2).  Moreover, Plaintiff does not represent that he served a copy of the Motion to Strike on defense counsel, which is also required by Rule 11.  Based on these deficiencies, the Court cannot grant the relief Plaintiff seeks.  The Motion to Strike

is respectfully **DENIED**.  *See Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012) ("[I]t is an abuse of discretion to grant Rule 11 sanctions if the [movant] did not comply with the safe-harbor provision.").

### III.    Alternative Dispute Resolution

Local Rule 16.6 provides that "[a] district judge . . . may direct the parties to engage in an early neutral evaluation or other alternative dispute resolution proceeding." D.C.COLO.LCivR 16.6(a).  Based on the concerns identified by Judge Neureiter at the Scheduling Conference, *see* [Doc. 35], the relatively short time of alleged employment, [Doc. 1 at ¶ 29], and the nature of the Parties' dispute, it would not be in the interest of judicial economy to proceed to a full discovery schedule at this time.  Accordingly, **discovery remains stayed**.  It is **ORDERED** that on or before **November 26, 2025**, the Parties shall engage in good faith in alternative dispute resolution.  On or before **September 29, 2025**, the Parties shall file a joint status report informing the Court of the date of the scheduled mediation, the mediator selected, and any other relevant information.  If, after a good faith meet and confer, the Parties seek a settlement conference before Judge Neureiter, they shall file a motion requesting that relief on or before **September 18, 2025**.  **No extensions of these deadlines will be granted absent extraordinary circumstances.**

CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant's Renewed Motion for Summary Judgment Seeking Dismissal Of:

      (A) the First Claim for Relief Due to the Non-Applicability of the FLSA; and

(B) the Remaining State Law Claims Due to Lack of Subject Matter Jurisdiction [Doc. 51] is **DENIED**;

(2)    Plaintiff's Motion to Strike Defendants' Reply in Support of Renewed Motion for Summary Judgment or for Other Sanctions [Doc. 68] is **DENIED**; and

(3)    On or before **November 26, 2025**, the Parties shall engage in good faith in alternative dispute resolution.  On or before **September 29, 2025**, the Parties shall file a joint status report informing the Court of the date of the scheduled mediation, the mediator selected, and any other relevant information.  If the Parties seek a settlement conference before Judge Neureiter, they shall file a motion requesting that relief on or before **September 18, 2025**.

DATED:  August 28, 2025

BY THE COURT:

Nina Y. Wang
United States District Judge